

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW BEAUSCHESNE, an individual,

Plaintiff,

v.

FORD MOTOR COMPANY, and DOES 1 through 10, inclusive,

Defendants.

Case No.:  25-CV-69 JLS (DEB)

**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES**

(ECF No. 27)

Presently before the Court is Plaintiff Matthew Beauschesne's ("Plaintiff") Motion for Attorneys' Fees, Costs, and Expenses ("Mot.," ECF No. 27).  Also before the Court are Defendant Ford Motor Company's ("Defendant") Opposition ("Opp'n," ECF No. 28) and Plaintiff's Reply in Support of the Motion ("Reply," ECF No. 30).  Having considered the Parties' arguments and the law, the Court **GRANTS IN PART** Plaintiff's Motion and **AWARDS** Plaintiff attorneys' fees in the amount of $38,073.50 plus costs in the amount of $897.43, for a total reward of $38,970.93.

/ / /

/ / /

/ / /

/ / /

1

## BACKGROUND

On December 17, 2019, Plaintiff purchased a Ford F1-50 ("the Vehicle") from Defendant, which was manufactured or distributed by Defendant, for a total cost of $54,662.20. Opp'n at 6.[1] Plaintiff alleges that, due to various safety defects, the Vehicle was repaired three times from July 2023 to December 2023, and again in August 2024, causing it to be out of service for a total of at least forty-six days. *See* Opp'n, Ex. B–E; ECF No. 27-1 ("Hunt Decl.") ¶ 5. On July 17, 2024, Plaintiff contacted Defendant and requested that it repurchase the Vehicle. Hunt Decl. ¶ 6. Plaintiff again contacted Defendant on July 29, 2024, and was informed Defendant had not yet decided whether to repurchase the Vehicle. *Id.* On August 5, 2024, Plaintiff again presented the Vehicle for repair, and on August 16, 2024, Plaintiff filed suit in state court alleging Defendant violated the Song-Beverly Consumer Warranty Act. *See* ECF No. 1-2 ("Compl."). Defendant made subsequent offers to repurchase Plaintiff's Vehicle on August 30, 2024, and September 10, 2024, which Plaintiff declined. ECF No. 28-1 ("Richardson Decl.") ¶¶ 8–9. Defendant filed a Notice of Removal on January 13, 2025, and Plaintiff filed a Motion to Remand on March 6, 2025, which Plaintiff later withdrew after accepting Defendant's Rule 68 Offer of Judgment to repurchase the Vehicle for $31,000.00. *See* ECF Nos. 1, 6, 26. The Parties agreed that Plaintiff "may apply for a fee award on the ground that [P]laintiff is a prevailing party entitled to attorney's fees, costs, and expenses pursuant to Cal. Civ. Code § 1794(d)." *See* Opp'n, Ex. J at 67. Plaintiff filed the present Motion, seeking $38,073.50 in fees and $897.43 in incurred costs related to this matter. *See* Mot.

/ / /

/ / /

/ / /

/ / /

---

[1] Pin citations to the Motion, Opposition, and Reply refer to the CM/ECF page numbers electronically stamped at the top of each page.

25-CV-69 JLS (DEB)

## LEGAL STANDARD

"District courts follow the forum state's law for awarding attorney's fees when exercising their diversity jurisdiction over state-law claims." *Siafarikas v. Mercedes-Benz USA, LLC*, No. 20-CV-1784-JAM-AC, 2022 WL 16926265, at *1 (E.D. Cal. Nov. 14, 2022). Under § 1794(d) of California's Song-Beverly Act, the prevailing party shall be allowed to recover attorneys' fees "based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). "A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (internal quotation marks omitted). "To challenge attorneys' fees as excessive, the challenging party must point to the specific items challenged, with a sufficient argument and citations to the evidence." *Nai Hung Li v. FCA US LLC*, No. 17-CV-6290-R-JEM, 2019 WL 6317769, at *1 (C.D. Cal. July 1, 2019) (internal quotation marks omitted). "The California Court of Appeal has expressly held that the lodestar method applies to determining attorneys' fees under the Song-Beverly Act." *Id.* (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1137–39 (2001)). The lodestar method consists of two steps. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the [*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by*, *City of Burlington v. Dague*, 505 U.S. 557 (1992),*] factors that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119 (first citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); and then citing *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).

/ / /

3

**ANALYSIS**

California Civil Code § 1793.2(d)(2) provides that:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . .

Plaintiff filed suit alleging Defendant did not meet its obligations under § 1793.2(d)(2), and Plaintiff now contends that they are the prevailing party and entitled to attorneys' fees under California Civil Code § 1794(d).  *See generally* Mot.

Plaintiff seeks to recover a total of $38,970.93, comprised of $38,073.50 for 98.3 total billed hours and $897.43 in costs, with a 0.1 multiplier.  *Id.* at 25–26.  Defendant challenges Plaintiff's fee submission on the grounds that Plaintiff is not a "prevailing party" under § 1794(d).  Opp'n at 6.  Defendant requests that if fees are awarded, they only be awarded for fees Plaintiff incurred before August 30, 2024.  *Id.*  Defendant also contends Plaintiff's billing rate should be reduced and that no multiplier should be applied.  *Id.*

**I. Attorneys' Fees**

### A.    *Prevailing Party*

Plaintiff is only entitled to attorneys' fees should he be considered the prevailing party.  The allocation of attorneys' fees "is governed by the fee-shifting statute itself, rather than a rigid adherence to Code of Civil Procedure Section 1032."  *Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1264 (2012).  When a fee-shifting statute does not define prevailing party, the Court takes a "pragmatic approach" and considers "which party succeeded on a practical level, by considering the extent to which each party realized its litigation objectives."  *Id.* (first citing *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178–81 (2007); then citing *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 149–51 (2006); and then citing *Castro v. Superior Ct.*, 116 Cal. App. 4th 1010, 1018–20 (2004)).  Under § 1794(d), obtaining a "net monetary recovery in the action [does] not necessarily render [a party] the prevailing party."  *MacQuiddy v. Mercedes-Benz*

25-CV-69 JLS (DEB)

*USA, LLC*, 233 Cal. App. 4th 1036, 1047 (2015).  Rather, the Court is guided by "equitable considerations" and considers "substance rather than form."  *Rangel v. Ford Motor Co.*, No. CV 20-11440-GW-ASx, 2021 WL 9059844, at *3 (C.D. Cal. Mar. 1, 2021) (citing *Hsu v. Abbara*, 9 Cal. 4th 863, 877 (1995)).  The Song-Beverly Act "is manifestly a remedial measure, intended for the protection of the consumer; [and] it should be given a construction calculated to bring its benefits into action."  *Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 990 (1998) (citing *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 184 (1994)).

Plaintiff bears the burden of proving he presented the Vehicle to the manufacturer for repair, and that the manufacturer did not correct the issue after a reasonable number of repair attempts.  *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001).  "The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity."  *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 798–99 (2006).  Manufacturers have "an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts . . . ."  *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 303 (1995).  California Civil Code § 1793(d)(2) does not define what qualifies as "promptly" replacing a vehicle, but courts have found reasonably prompt repurchase offers to occur forty to fifty days after the manufacturer's obligation arises.  *Carver v. Volkswagen Grp. of Am., Inc.*, 107 Cal. App. 5th 864, 879–80 (2024); *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008) (finding a repurchase offer within six weeks of a repurchase request to be reasonably prompt); *De Leon v. Ford Motor Co.*, No. CV 18-7975 PSG (FFMx), 2019 WL 7195325, at *6 (C.D. Cal. Nov. 13, 2019) (stating "[c]ourts have generally found that a manufacturer makes a prompt offer when it is made within fifty days"); *Medrano v. Volkswagen Grp. of Am., Inc.*, No. 12-CV-2198-SVW-MAN, 2012 WL 12882428, at *3 (C.D. Cal. July 6, 2012) (holding forty-five days between a repurchase request and offer would be prompt).

Here, Plaintiff seeks attorneys' fees on the grounds he obtained a judgment in his favor and reached his objective of forcing Defendant to repurchase the Vehicle. Mot. at 17. Defendant contends Plaintiff is not entitled to attorneys' fees because he filed suit prematurely and deprived Defendant of a chance to make a reasonably prompt repurchase offer. Opp'n at 12–13. Additionally, Defendant argues Plaintiff "achieved nothing" by filing suit. *Id.* at 6.

It is not disputed that Plaintiff presented the Vehicle for repair on multiple occasions during the warranty period. *See* Mot. at 8. The dispositive question in this matter is when Defendant's duty to repurchase Plaintiff's Vehicle arose under § 1793(d)(2).

According to the records presented, Plaintiff presented the Vehicle for repair on July 18, 2023, September 18, 2023, December 1, 2023, and August 5, 2024. *See* Opp'n, Ex. B–E. Plaintiff contends Defendant had affirmative repurchase obligations as of August 17, 2023, September 18, 2023, August 5, 2024, and July 17, 2024, under § 1793.2(b), § 1793.22(b)(1), § 1793.22(b)(2), and § 1793.2(d)(2). *See* Mot. 8–9. Defendant asserts its repurchase obligation did not arise until Plaintiff's repurchase request on July 17, 2024, and claims Plaintiff prematurely filed suit and prevented them from making a reasonably prompt repurchase offer. Opp'n at 14. The Court finds that Defendant's repurchase obligation derives solely from § 1793.2(d)(2) and examines the present matter through this Section and its pertinent case law.

Plaintiff relies on *Krotin v. Porsche Cars North America, Inc.* to support his position. *Krotin* stands for the proposition that manufacturers have an "affirmative duty" to replace a vehicle they are unable to repair after a reasonable number of attempts. *Krotin*, 38 Cal. App. 4th at 303. The court in *Krotin* held that the Song-Beverly Act "does not require consumers to take any affirmative steps to secure relief . . . other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle." *Id.* at 302–03. The court explicitly stated, "the consumer's request is not mandated by any provision in the act." *Id.* at 303. Simultaneously, the court noted that a manufacturer "seldom on its own initiative offers [to repurchase the vehicle]," meaning a consumer's replacement request is "often

25-CV-69 JLS (DEB)

prompted by the manufacturer's unforthright approach and stonewalling of fundamental warranty problems." *Id.* A key aspect of the court's reasoning was that manufacturers can determine when a vehicle is defective by examining its dealers' service records. *Id.*

Defendant contends Plaintiff "over-reads" the *Krotin* holding, and argues the case merely reflects that there is a "rare set of facts" in which a manufacturer is on notice that a repurchase is necessary without the consumer making a repurchase request. Opp'n at 10. Defendant's position is supported by multiple District Courts. *See Islas v. Ford Motor Co.*, No. 18-CV-2221-GW(SPx), 2019 WL 10855294, at *6–7 (C.D. Cal. July 29, 2019) (holding *Krotin* did not create an affirmative repurchase obligation on the part of the manufacturer prior to a repurchase request); *Gonzalez v. Volkswagen Grp. of Am.*, No. 22-CV-6058-JLS-JC, 2024 WL 5371341, at *4 (C.D. Cal. Jan. 24, 2024) (stating that interpreting *Krotin* to create an affirmative repurchase duty prior to a repurchase request "is at odds with how the Song-Beverly Act is typically understood"); *Silva v. Ford Motor Co.*, No. 24-CV-3674-DJC-SJR, 2025 WL 2879624, at *2 (E.D. Cal. Oct. 8, 2025) (declining to interpret *Krotin* as placing an affirmative repurchase duty on manufacturers before a repurchase request).

Defendant primarily relies on *Carver v. Volkswagen* and *Rangel v. Ford Motor Co.* to argue Plaintiff prematurely filed suit and cannot be deemed the prevailing party. *See* Opp'n 11–16; *Carver*, 107 Cal. App. 5th 864; *Rangel*, 2021 WL 9059844.

The court in *Carver* ruled that the defendant acted promptly in offering to repurchase the vehicle twenty days after plaintiff's repurchase request. *Carver*, 107 Cal. App. 5th at 880. The court discussed whether the manufacturer's repurchase duty arose prior to plaintiff's repurchase request, but it did not decide the matter because regardless of when the duty arose, defendant's repurchase offer would have been within the fifty-day timeline. *Id.* at 880. The court also contended *Krotin* did not support the plaintiff's argument because defendant did not engage in any "stonewalling" or unforthright behavior, as they made repair efforts and consistently communicated with plaintiff while they reviewed his repurchase request. *Id.* at 880–81.

25-CV-69 JLS (DEB)

Although the court in *Carver* expressed a narrow view of *Krotin*, it did not affirmatively state that a manufacturer's repurchase duty did not arise until a consumer's repurchase request. *Id.* at 880. Additionally, the vehicle in *Carver* was only presented for repair on one occasion, and the court lauded the manufacturer's consistent communication and transparency with the consumer. *Id.* at 880–81. Here, at the time of his repurchase request, Plaintiff had already presented his Vehicle for repair on three occasions. *See* Mot. at 9. Additionally, Plaintiff did not hear from Defendant before contacting it twelve days after his repurchase request, by which time Defendant still had not made a repurchase decision. *See id.* Plaintiff again presented his Vehicle for repair six days later and waited an additional eleven days before filing suit. *Id.* By the time Plaintiff filed suit, his Vehicle had been presented for repair on four occasions and had still not been conformed to warranty. *Id.* Additionally, he had not received an update from Defendant since making his repurchase request thirty days prior. *Id.* It was not until after Plaintiff filed suit that Defendant informed him of its decision to repurchase the Vehicle. *Id.* Defendant cannot be said to have acted with the same urgency as the manufacturer in *Carver*, and the Court is unable to say with certainty that there is no evidence of an unforthright approach. Therefore, *Carver* is distinguishable from this case.

In *Rangel*, the plaintiff requested that the defendant repurchase his vehicle, and defendant notified plaintiff five days later his request was under review. *Rangel*, 2021 WL 9059844, at *1. The plaintiff filed suit two days later, before defendant made its repurchase offer four days later. *Id.* About six weeks into litigation, the plaintiff accepted a Rule 68 Offer of Judgment in which the defendant repurchased the vehicle. *Id.* Because there was no evidence that the defendant failed to act promptly, and it was "impossible" to determine how much of the plaintiff's recovery was attributable to the lawsuit, the court did not consider the plaintiff the prevailing party and did not award him attorneys' fees. *Id.* at *3.

While *Rangel* stands for the proposition that a premature filing of suit can preclude a plaintiff from being the prevailing party, it is clearly distinguishable from this case. *Id.* As outlined above, the record reveals that Plaintiff did not rush to file suit, and his behavior

25-CV-69 JLS (DEB)

here is therefore not comparable to the overzealous plaintiff in *Rangel* that waited only a week before filing suit. The Court does not view *Carver* or *Rangel* as instructive cases in deciding this matter.

The Court applies *Krotin* to find Defendant's affirmative duty arose long before Plaintiff's repurchase request. In doing so, the Court is guided by recent precedent and the "remedial purpose" of the Song-Beverly Act. *See Murillo*, 17 Cal. 4th at 990. A recent district court decision held that *Krotin* places an affirmative duty on manufacturers to replace a vehicle after failing to repair it after a reasonable number of attempts. *Rivas v. Ford Motor Co.*, No. 25-CV-4821-SPG-JPR, 2026 WL 127775, at *3 (C.D. Cal. Jan. 15, 2026). There, the court followed *Krotin* and stated that a plain reading of § 1793.2(d) does not indicate the consumer must request a repurchase to initiate the manufacturer's repurchase duty. *Id.* The Court stated that policy arguments in favor of requiring a consumer's request "are better directed to the California Legislature." *Id.* Other district courts have also adopted this interpretation of *Krotin*. *See Anderson v. BMW of N. Am., LLC*, No. 18-CV-57-WVG, 2018 WL 2011006, at *2 (S.D. Cal. Apr. 30, 2018) (stating that under *Krotin*, manufacturers have a duty to replace vehicles prior to a consumer's repurchase request); *Robinson v. Kia Motors Am., Inc.*, No. 10-CV-3187-MCE-GGH, 2011 WL 1459016, at *5 (E.D. Cal. Apr. 14, 2011) (stating that "in light of *Krotin*, [d]efendant is expected to review its dealers' service records, and so [it] should have known of the failed attempts to repair the defect"); *Nguyen v. Volkswagen Grp. of Am.*, 737 F. Supp. 3d 937, 945 (C.D. Cal. 2024) (finding that "under Song-Beverly, [the car manufacturer] had a legal obligation to repurchase the vehicle promptly after a reasonable number of repair attempts" and it was no defense to argue that the plaintiff did not request the remedy before filing for arbitration).

Additionally, the California Supreme Court expressed approval for this interpretation of *Krotin*, as it cited the proposition that "the Act does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties—other than, of course, permitting the

25-CV-69 JLS (DEB)

manufacturer a reasonable opportunity to repair the vehicle." *Niedermeier v. FCA US LLC* 15 Cal. 5th 792, 818 (2024) (quoting *Krotin*, 38 Cal. App. 4th at 302–03). The Court also stated, "Once the manufacturer is unable to repair the vehicle after a reasonable number of attempts, the *manufacturer's obligation to promptly provide restitution to the buyer arises*." *Id.* at 818–19 (emphasis added). Courts in the California Fourth District Court of Appeal have also adopted this interpretation of *Krotin*. *See Martinez v. Kia Motors Am., Inc.*, 193 Cal. App. 4th 187, 194 (2011) (holding that the Song-Beverly Act only requires the consumer to submit the vehicle for repair); *Oregel*, 90 Cal. App. 4th at 1103 (holding the only affirmative step required of the consumer under § 1793.2(d)(2) was to submit their vehicle for repair).

The Court abides by *Krotin* and its supporting precedent and finds that Defendant's duty to replace Plaintiff's Vehicle began after it was unable to remedy the Vehicle's defect within a reasonable number of repair attempts. The Court relies on the specific facts and circumstances of this case to determine when Defendant's repurchase obligation began. *See Robertson*, 144 Cal. App. 4th at 798–99. Based on the record, the Court finds that Defendant's repurchase obligation arose at the earliest after the second failed repair attempt, on September 18, 2023, and at the latest after the third failed repair attempt on December 1, 2023. *See* Mot. at 9; *see also Gamaty v. BMW of N. Am., LLC*, No. 21-CV-1063-RGK (AFMx), 2022 WL 1591701, at *2 (C.D. Cal. March 2, 2022) ("The 'reasonable number of attempts' bar is low, however; a plaintiff need only present the nonconformity for repair twice to satisfy the standard." (quoting *Robertson*, 144 Cal. App. 4th at 799)). It is not necessary to decide on which date the duty began, as regardless, Defendant's repurchase obligation took effect far more than fifty days before Plaintiff filed suit on August 17, 2024.

Plaintiff fulfilled his burden under the Song-Beverly Act of presenting the Vehicle for repair. *See Oregel*, 90 Cal. App. 4th at 1101. The Song-Beverly Act was created to provide recourse for consumers whose vehicles had unrepairable defects within the warranty period, and the Court interprets its provisions in a manner consistent with this

purpose.  *See Murillo*, 17 Cal. 4th at 990.  Defendant claims there must be facts that "place the manufacturer on notice that the vehicle cannot be confirmed to warranty and that the customer desires a replacement."  Opp'n at 16.  However, the *Krotin* court emphasized that manufacturers possess the ability to assess when a vehicle cannot be conformed to warranty through an examination of repair records.  *Krotin*, 38 Cal. App. 4th at 303.  Here, Defendant's three repair attempts within a short period in late 2023 provided the manufacturer with notice that the Vehicle was not going to be repaired to conform with warranty.  *See generally* Mot.  Considering the record in its totality, it would not be in accordance with the purpose of the Song-Beverly Act, let alone common sense, to deny Plaintiff prevailing party status, after he presented his Vehicle on numerous occasions for repair, waited patiently before requesting that Defendant repurchase his Vehicle, and eventually filed suit.  *See generally* Mot.

Defendant also argues that Plaintiff is not the prevailing party because the Rule 68 Offer of Judgment contained the "very same terms" as Defendant's initial repurchase offers.  Opp'n at 6.  The Parties ultimately agreed to a payment of $31,000.00 in the Rule 68 Offer of Judgment, but the Parties differ in their valuation of Defendant's initial offer. *See* Opp'n at 19; Reply at 5.  Defendant contends its August 2024 Song-Beverly repurchase offer would have totaled $30,947.37.  Opp'n at 19.  Plaintiff contends Defendant's first itemized repurchase offer on October 11, 2024, was for $30,420.00 and required that Plaintiff consent to a waiver of liability.  Mot. at 17.  Plaintiff also claims Defendant's Rule 68 Offer of Judgment did not include confidentiality terms and denials of liability that are usually present in Defendant's settlement agreements.  Reply at 6.

To support its position, Defendant cites *Campos v. Ford Motor Co.*, No. EDCV 17-02221 AG (AGRx), 2020 WL 256125, at *2 (C.D. Cal. Jan. 13, 2020).  In *Campos*, the plaintiff declined the defendant's pre-litigation offer and filed suit, only to accept a nearly identical offer over a year later in the form of a Rule 68 Offer.  *Id.* at *2.  This is distinguishable from the present matter, where Defendant never made a pre-litigation repurchase offer.  *See generally* Mot.  Plaintiff rejected offers early in litigation, but courts

have previously held that plaintiffs rejecting settlement offers, even pre-litigation offers, do not preclude them from being the prevailing party. *See Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 471 (2016) (holding plaintiff acted reasonably by rejecting pre-litigation offers with "extraneous terms"); *McKenzie v. Ford Motor Co.*, 238 Cal. App. 4th 695, 705–08 (2015) (holding plaintiff was justified in rejecting initial settlement offer that contained a broad waiver of liability); *Gezalyan v. BMW of N. Am., LLC*, 697 F. Supp. 2d 1168, 1170 (C.D. Cal. 2010) (holding plaintiff acted reasonably in rejecting settlement offer with a confidentiality agreement).

There is nothing in the record to suggest Plaintiff acted unreasonably by rejecting Defendant's early settlement offers. Although the Parties ultimately settled for a similar monetary figure, the Court considers material the absence of non-monetary terms in the Rule 68 Offer of Judgment that were present in early settlement negotiations. *See* Reply at 6.

Most importantly, when determining the prevailing party, courts consider which party obtained their litigation objectives from a practical point of view. *See Wohlgemuth*, 207 Cal. App. 4th at 1264. Here, Plaintiff filed suit to force Defendant to repurchase his Vehicle, and he succeeded in that goal. Therefore, on a practical level, Plaintiff achieved his litigation objective. *See id.* In determining the prevailing party, the Court is guided by the Song-Beverly Act's remedial purpose and relies on equitable principles. *See Murillo*, 17 Cal. 4th at 990; *Rangel*, 2021 WL 9059844, at *3. Examining the record with this in mind, the Court finds Plaintiff to be the prevailing party in this matter, making him entitled to reasonable attorneys' fees.

**B. Lodestar Figure**

*1. Reasonableness of Hourly Rates*

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th

Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *Phelps Dodge Corp.*, 896 F.2d at 407). If the fee target fails to dispute the market rate with countervailing evidence, a court is permitted to presume the requested rates are reasonable. *See U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105–06 (9th Cir. 2015). Because this case was pending in 2025, the Court will use 2025 rate determinations to establish the prevailing market rate.

Here, Plaintiff seeks approval of the following hourly rates for Plaintiff's counsel and paraprofessionals: $595.00/hour for Joseph Kaufman, shareholder with twenty-two years of experience; $375.00/hour for Associate Christopher R. Hunt with two years of experience; and $175.00/hour for paralegal Melissa Lopez, with three years of experience. *See* Mot. at 21. Plaintiff contends these hourly rates have been approved by courts within the Southern District of California and are similar to the rates of other attorneys in the market. *Id.* Plaintiff argues that because counsel took this case on a contingency basis, counsel is expected to receive a higher hourly fee. *Id.* (citing *Rader v. Thrasher*, 57 Cal. 2d 244, 253 (1962)). Plaintiff also states that Defendant delayed resolution of the case, causing fees to rise. *Id.* at 22 (citing Hunt Decl. ¶¶ 7–12). Additionally, Plaintiff contends counsel exhibited expertise that provided Plaintiff with a favorable result. *Id.* at 23.

Defendant argues Plaintiff prolonged litigation by declining reasonable settlement offers and failing to provide Defendant with the necessary information to formulate a Song-Beverly repurchase offer. Opp'n at 17. Defendant also contends counsel was not needed, considering Defendant was planning to repurchase the Vehicle regardless of litigation. *Id.*

at 20.  Defendant also argues that Plaintiff's hourly rates are excessive, as the reasonable hourly rate is the prevailing rate for attorneys practicing noncontingent litigation in the same area of law.  *Id.* at 22 (citing *Ketchum*, 24 Cal. 4th at 1133).  Defendant cites California Superior Court cases that have reduced the fees of law firm partners in Song-Beverly cases to $350/hour and contends Plaintiff's proposed rates are excessive for lemon law litigation.  *Id.*, Ex. K–M.  Defendant asks that, should fees be awarded, the Court strike at least 86.9 hours in unnecessary fees incurred after Ford's August 30, 2024, settlement offer and apply only a $350 hourly rate to the hours billed prior to that date.  *See id.* at 26.

Plaintiff asserts his hourly rate has been approved "in at least nineteen cases," and provides fourteen prior cases in state and federal court where his hourly rate of $595/hr was approved.  Kaufman Decl. ¶ 6.  Courts in the Central District and Northern District of California approved Mr. Kaufman's hourly rate as recently as 2024.  *See id.*; *Nguyen v. Volkswagen Grp. of Am., Inc.*, No. 23-CV-4104-HDV-JC, ECF No. 64, at 4 (C.D. Cal. Nov. 6, 2024); *Kohndrow v. Ford Motor Co.*, No. 23-CV-4354-PCP, ECF No. 37, at 2 (N.D. Cal. Sept. 3, 2024).  Additionally, as early as 2016, an hourly rate of $575 was deemed reasonable for a senior attorney handling a Song-Beverly action.  *See Goglin*, 4 Cal. App. 5th at 473.  Plaintiff is the founder and shareholder of Joseph Kaufman & Associates, Inc., and has practiced lemon law for over twenty years.  Kaufman Decl. ¶¶ 1–3.  Plaintiff provides evidence of lemon law attorneys with similar levels of experience who bill at a greater hourly rate.  *Id.* at ¶ 11.  Based on prior case law and the evidence Plaintiff provides, Mr. Kaufman's hourly rate of $595 appears reasonable, and Defendant fails to demonstrate otherwise.  *See Camacho*, 523 F.3d at 979; *Cortes*, 380 F. Supp. 2d at 1129.

Defendant does not contest Mr. Hunt's fee rate of $375/hr.  Mr. Hunt has worked for Joseph Kaufman & Associates since 2023, when he began practicing law.  Hunt Decl. ¶ 13.  During this time, Mr. Hunt has been involved in over 100 matters and has been the primary attorney on "at least 6 cases."  *Id.*  Plaintiff provides fourteen cases in which his hourly rate of $375 was approved by a superior court.  *Id.* at ¶ 15.  For the foregoing

14

reasons, the Court finds Mr. Hunt's hourly rate to be reasonable.

Additionally, Defendant does not contend that the hourly rate of $175.00 for Ms. Lopez, a third-year paralegal, is unreasonable.  Accordingly, the Court finds the $175/hour rate to be reasonable.  Because the Court deemed Plaintiff's rejection of Defendant's August 30, 2024, settlement offer to be reasonable, the Court will not strike 86.9 hours of fees as Defendant requests.

### 2. Reasonableness of Time Expended

"The party seeking an award of fees should submit evidence supporting the hours worked."  *Hensley*, 461 U.S. at 433.  "The district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary."  *Id.*  "Overlitigation deemed excessive does not count towards the reasonable time component of a lodestar calculation."  *Puccio v. Love*, No. 16-CV-2890 W (BGS), 2020 WL 434481, at *6 (S.D. Cal. Jan. 28, 2020) (citing *Tomovich v. Wolpoff & Abramson, LLP*, No. 08-CV-1428-JM (BLM), 2009 WL 2447710, at *4–5 (S.D. Cal. Aug. 7, 2009)).  However, the Ninth Circuit has also instructed that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Ultimately, "the [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged."  *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (first citing *Blum*, 465 U.S. at 892 n.5; and then citing *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).  "[F]ail[ure] to offer either countervailing evidence or persuasive argumentation in support of [the fee target's] position" permits the district court to presume a properly supported fee application is reasonable.  *$28,000.00 in U.S. Currency*, 802 F.3d at 1106–07 (citations and internal quotation marks omitted).

Plaintiff provided the Court with detailed billing records, which indicate Plaintiff spent 98.3 total hours on this matter, with Mr. Kaufman billing 13.8 hours, Mr. Hunt billing 78.0 hours, and Ms. Lopez billing 3.5 hours.  Mot., Ex. 2.  Plaintiff claims fees should be

25-CV-69 JLS (DEB)

based not on the total amount of damages recovered, but on the time counsel exerted on the matter.  Mot. at 25–26.  Plaintiff also contends the Court should defer to Plaintiff's counsel's professional judgment and that the time claimed must be "obviously and convincingly excessive" to be reduced.  *Id.* at 23 (first citing *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010); and then citing *Moreno* 534 F.3d at 1112 (9th Cir. 2008)).

Defendant argues that ultimately none of the work done by Plaintiff was necessary at any rate, because Plaintiff filed suit prematurely, and failed to obtain a favorable result.  Opp'n at 21–24.  As previously explained, the Court is unpersuaded by this argument and finds Plaintiff to be the prevailing party, meaning the Court exhibits deference to Plaintiff's billing record.  *See Moreno*, 534 F.3d at 1112.  Defendant also contends Plaintiff drove up billing by discrediting and rejecting Ford's early settlement offers.  Opp'n at 17.  The Court also finds this unpersuasive, as rejecting settlement offers earlier in litigation does not preclude Plaintiff from collecting attorneys' fees, and there was no evidence Plaintiff acted unreasonably in the present matter.  *See Goglin*, 4 Cal. App. 5th at 471.  Additionally, the Court does not engage in second guessing of the prevailing party's litigation tactics. *Moreno*, 534 F.3d at 1112.

Defendant argues Plaintiff's alleged work is "manifestly excessive" and refers to several of Plaintiff's entries as "facially dubious."  Opp'n at 23–24.  Specifically, Defendant targets the following 2.8-hour entry by Mr. Kaufman, which stated: "Prepare detailed memo re case handling assignment, discovery, and case handling strategy and supplement memo re sales, service, and pre-litigation case history."  *Id.*  Defendant argues this was excessive for a lemon law matter with only four repair representations.  *Id.* Additionally, Defendant attacks the 2.4 hours Plaintiff billed for drafting the Motion to Remand that was later withdrawn after Plaintiff accepted the Rule 68 Offer.  *Id.*

The Court addresses these two entries in turn.  The 2.8-hour entry for preparing a case handling memorandum does not appear manifestly unreasonable and does not appear excessive in time.  Defendant contends this is a less complex issue, as the Vehicle was only

25-CV-69 JLS (DEB)

presented for repair on four occasions, but fails to provide any further detail as to why this billing is unreasonable and therefore fails to "[provide] specific evidence to challenge the accuracy and reasonableness of the hours charged." *See McGrath*, 67 F.3d at 255. As for the Motion to Remand, there is no evidence presented that this Motion was prepared in bad faith, or with the intention of increasing fees. Plaintiff filed the Motion on February 12, 2025, and only filed his withdrawal of the Motion on July 15, 2025, after accepting Defendant's Rule 68 Offer of Judgment. *See* ECF Nos. 6, 17. For the foregoing reasons, the Court finds no reason to believe either of these entries were "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434.

### C. Lodestar Multiplier Enhancement

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr*." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by*, *City of Burlington*, 505 U.S. 557). The *Kerr* factors are:

> (1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases.

526 F.2d at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622 (citing *D'Emanuele*, 904 F.3d at 1383). While the court may rely on any of these factors to increase or decrease the lodestar figure, there is a "'strong presumption' that the lodestar is the reasonable fee." *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009) (quoting *City of Burlington*, 505

25-CV-69 JLS (DEB)

U.S. at 562); *accord Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416 (2007).

Plaintiff seeks a 0.1 multiplier enhancement because of the favorable result counsel obtained, the contingent risk incurred, and the delay in payment. Mot. at 27–28. Defendant contends an enhancement for contingent risk cannot be applied when the lodestar already accounts for continent risk, and states that admitting the multiplier on this basis would amount to "double counting." Opp'n. at 25. Defendant also asserts that Plaintiff does not deserve a multiplier for obtaining what was a standard result, and that the delayed recovery was already factored into the lodestar analysis. *Id.* at 26.

Here, the Court relies on the *Kerr* factors to determine that the lodestar amount should not be increased. While there was some risk taken by Plaintiff in working on a contingency basis and obtaining a delayed payment, none of the other *Kerr* factors favor applying a multiplier. Although Plaintiff succeeded in getting the Vehicle repurchased, this is not such an extreme result that justifies altering the lodestar figure. Additionally, lemon law litigation does not present complex legal issues that are considered unduly burdensome or time intensive. *See Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 746 (D.N.J. 1995), *aff'd sub nom.*, *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996) ("[T]he issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading."). Plaintiff's experience and ability were already factored into the lodestar calculation, and there is nothing to suggest this matter presented any novel issues or challenges. Bearing in mind the "strong presumption" that the lodestar calculation is reasonable and the lack of any exceptional circumstances in the present matter, the Court finds a lodestar multiplier enhancement to be inappropriate in this case. *See Crawford*, 586 F.3d at 1149.

### D. Additional Fees and Costs Incurred for this Motion and All Further Work

Plaintiff contends they should collect fees incurred in filing the present Motion and reviewing Defendant's Opposition and filing a Reply. Mot. at 29. Plaintiff anticipates exerting another seven hours of attorney work and two hours of paralegal work in resolving

25-CV-69 JLS (DEB)

this matter, which includes communicating with the client, preparing and filing the dismissal, and finalizing any other issues. *Id.*

Plaintiff provides a list of all expenses incurred throughout litigation, and Defendant does not contest these costs. *See* Mot., Ex. 2; *see generally* Opp'n. The Court does not find any of these costs to be unnecessary or duplicative and therefore sees no reason to reduce the award of $897.43 in costs.

<strong>CONCLUSION</strong>

In light of the foregoing, the Court **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees (ECF No. 27) and **AWARDS** Plaintiff attorneys' fees in the amount of $38,073.50 plus costs in the amount of $897.43, for a total reward of $38,970.93. As this Concludes the litigation in this matter, the Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: March 16, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-69 JLS (DEB)